CHARLES VICTOR BENECKE and OTTO AUGUST BENECKE, Respondents, *v.* THEODORE HAEBLER and OSCAR FAEHRMANN, Appellants.

*Contract to accept a draft of a third person drawn against merchandise sold — what letter is an approval of the acceptance — when the acceptors are not mere guarantors — they are not bound to inquire as to the quality of the merchandise drawn against — when liability under the contract arises — laches in the sale of the merchandise.*

The vendees named in an executory contract for the sale, by sample, of certain merchandise made application to a firm of bankers in the following terms: " Please issue a letter of credit for account of ourselves, in favor of Anton Strauss of Budapest (the vendor), for any sums not exceeding about eight hundred twenty-five pounds Stlg. Drafts to be drawn at three months' date from date of bill of lading against shipment by steamer or steamers to New York, direct or otherwise, for invoice cost of 1,000 bags beans. Bills to be accompanied by full set, in due course, of blank indorsed bills of lading to order, and original invoice certified by the U. S. Consulate." The vendor availed himself of the letter of credit issued in pursuance of such application, by drawing a draft with the blank indorsed bill of lading and certified invoice attached, which draft was accepted by the bankers, to whom a "letter of lien" was written by the vendees upon the arrival of the beans in New York, in which they acknowledged the receipt, from the bankers, of the invoice and bill of lading for the merchandise "as per their letter of credit" for £825, and which stated "the said shipper having drawn upon Messrs. Benecke, Souchay & Co. for £813.7.8 on the said invoice, we agree to hold the above-mentioned goods, or the proceeds thereof, as the property of Messrs. Benecke, Souchay & Co., until we have covered the amount drawn for by proper remittances."

*Held,* that the letter constituted an approval by the vendees of the bankers' acceptance of the draft drawn by the vendor and a plain admission that both draft and acceptance were regular and in accordance with the terms of the vendees' letter of request; and that the latter could not thereafter contend that it was their intention, in directing the issue of the letter of credit, that the bankers should stand merely as guarantors of bills drawn by the vendor on the vendees;

That the fact that the merchandise delivered by the vendor was inferior to that contracted for, did not affect the vendees' liability for moneys paid by the bankers upon their acceptance, as the kind or quality of the merchandise to be furnished by the vendor was not defined in the vendees' application for the letter of credit, and no duty devolved upon the bankers to ascertain, before accepting the vendor's draft, whether the goods shipped corresponded in quality with the goods ordered;

That the bankers had no power to sell the merchandise against which the draft was drawn prior to their payment of their acceptance; and that such acceptance not having been paid until May twenty-fourth, no negligence could be imputed to the bankers for failing to sell such merchandise before the twenty-seventh day of June;

That no cause of action arose against the vendees by reason of a written notice served by them, prior to the maturity of the draft, stating that they would not pay the draft.

*Semble,* that the bankers were not obliged to sell the merchandise before enforcing the vendees' liability for their acceptance.

Appeal by the defendants, Theodore Haebler and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 13th day of December, 1898, upon the report of a referee.

*Robert B. Honeyman,* for the appellants.

*Thomas B. Hewitt* and *B. B. Blydenburgh,* for the respondents.

Judgment affirmed, with costs, on opinion of referee.

Present — Van Brunt, P. J., Patterson, O'Brien, Ingraham and McLaughlin, JJ.

The following is the opinion of the referee:

Hamilton Odell, Referee:

On the 21st of February, 1893, Anton Strauss, at Budapest, drew a draft for £813.7.8 on the plaintiffs, who were bankers doing business in London as Benecke, Souchay & Co. It was accepted by the drawees and paid by them at maturity on the twenty-fourth of May. Accompanying the draft was a bill of lading and certified invoice for 1,000 bags of beans shipped from Fiume by the steamship *City,* and deliverable to the order of Strauss in the city of New York. The bill was indorsed by Strauss in blank. The beans arrived in New York in due course, and were rejected by the defendants, to whom they had been sold by Strauss, on the ground of their alleged inferior quality. They were subsequently sold at public auction by the plaintiffs, after proper demand upon, and notice to, the defendants, and failed to realize the amount of the draft by the sum of $1,036.05. This action is brought to recover that deficiency.

The contract for the purchase and sale of "1,000 bags 1892 crop, white medium beans, free from colored, as per sample," was made between the defendants and Strauss (acting by The Western Agency, Limited) on the 27th of January, 1893. On the same day the

defendants made the following application to the plaintiffs ; "Please issue a letter of credit for account of ourselves, in favor of Anton Strauss of Budapest, for any sums not exceeding about eight hundred twenty-five pounds Stlg.. Drafts to be drawn at three months' date from date of bill of lading against shipment by steamer or steamers to New York, direct or otherwise, for invoice cost of 1,000 bags beans. Bills to be accompanied by full set, in due course, of blank indorsed bills of lading to order, and original invoice certified by the U. S. Consulate." In pursuance of this request the plaintiffs issued a letter of credit in favor of Strauss, and he availed himself thereof upon shipment of the beans, by drawing the draft with blank indorsed bill of lading and certified invoice attached, to which reference has been made.

I can find nothing in the case to support the claim that it was the understanding or intention that the plaintiffs, in granting the letter of credit, should stand merely as guarantors of bills drawn by Strauss on the defendants. The letter of credit is not in evidence. Presumably, its terms conform to the defendants' letter of request, which, as I understand it, was for a credit in favor of Strauss, under which he might draw upon the plaintiffs at three months from date of bill of lading for invoice cost of beans shipped by steamer to New York. The details stated in the letter of request, that is, the due dates of the drafts, the documents to accompany the drafts, the goods to be shipped, the mode and the date of shipment, the date when the credit should expire, were evidently to guide the plaintiffs in determining whether drafts drawn by Strauss should be accepted by them for the defendants' account. That the plaintiffs' acceptance was authorized and in accordance with the defendants' understanding seems to be put beyond dispute by a paper executed by the defendants on the fifteenth of March. The beans had then arrived in New York, and the defendants executed and delivered what is called a " letter of lien," in which they acknowledged the receipt from the plaintiffs of the invoice and bill of lading for the 1,000 bags of beans shipped by Strauss and consigned to the plaintiffs, " as per their letter of credit B, No. 501 " for £825, dated February 9, 1893, and which states as follows : " And the said shipper having drawn upon Messrs. Benecke, Souchay & Co. for £813.7.8. on the said invoice, we agree to hold the above-mentioned goods, or the proceeds thereof,

as the property of Messrs. Benecke, Souchay & Co., until we have covered the amount drawn for by proper remittances." This, it seems to me, was a plain approval by the defendants of ·the plaintiffs' acceptance of the draft drawn by Strauss, and a plain admission that both draft and acceptance were regular and in accordance with the terms of the defendants' letter of request. It is admitted that the acceptance was paid by the plaintiffs at its maturity. These facts constitute a good cause of action against the defendants. I cannot see that the fact that the beans sent forward by Strauss were inferior in quality to those contracted for at all affects the question of the defendants' liability for moneys paid by the plaintiffs in discharge of an obligation assumed by them at the defendants' request. The kind or quality of the beans to be shipped by Strauss was not defined in the defendants' letter asking for a credit, and no duty devolved upon the plaintiffs to ascertain, before accepting, whether the goods shipped corresponded in quality with the goods ordered.

A second defense is that the plaintiffs negligently and unduly delayed the sale of the beans after the defendants gave notice of their rejection, thereby causing the loss for which they now seek to recover. The facts are as follows: The beans arrived at New York about the fifteenth of March, and on that day the bill of lading and invoice were delivered to the defendants, who entered the beans in the Custom House, and, after inspecting them, informed Weber " that we would not take the beans until we made him some proposition on them." On the fourteenth of April the defendants gave Weber written notice that " we positively refuse to receive these beans, and will not honor the draft when due," and inclosed an order on the delivery clerk of the steamer *City* directing the delivery of the beans to Weber. This order was returned by Weber to the defendants on the following day. Thereupon the defendants wrote The Western Agency that the beans " are at the disposal of Mr. Anton Strauss, The Western Agency, Limited, and Messrs. Benecke, Souchay & Co., and we advise you to take care of them." The acceptance was paid by the plaintiffs on the twenty-fourth of May. On the seventh of June, Weber, for the plaintiffs, demanded of defendants the immediate delivery of the beans, in response to which the defendants returned the delivery order. On the twenty-seventh of June, "after proper demand and notice" (as it is stipulated), the

beans were sold at public auction, producing the net sum of $2,979.80. The undisputed testimony of the defendant Haebler is that there was a considerable decline in the value of beans in the New York market during May and June, 1893, but the extent of the decline does not satisfactorily appear. Haebler's opinion is that in the month of April the beans in question were worth the amount of the Strauss draft.

The plaintiffs insist, first, that they were not at liberty to sell the beans until after the payment of their acceptance, because until then they had no cause of action against the defendants. In this they are, I think, correct. No cause of action arose against the defendants by their notice on April fourteenth that they would not pay the draft. In *Burtis* v. *Thompson* (42 N. Y. 250) it was held that an action for the breach of a promise to marry will lie at once upon a positive refusal to perform, although the time specified for the performance has not arrived. The court said : " The defendant's counsel insists that, if this is the law to be applied in the present case, it will follow that the maker of a note due at a future day will make himself liable to an action instantly by declaring to the holder that he will never pay it. This conclusion does not at all follow. In the case of such a note the holder is in no respect damnified until payment is withheld after it is due. Until this happens, no legal right of his has been violated by the maker."

The plaintiffs further insist that they were not bound to use any greater diligence than they did use in making sale of the beans. I think that they are right in this also. They were at liberty, without a sale, to enforce the liability of the defendants for the full amount of the acceptance. A creditor, unless he has agreed to do so, is never bound to realize upon collateral which he holds before proceeding against the debtor to recover the debt. (*De Cordova* v. *Barnum*, 130 N. Y. 617 ; *People* v. *Remington*, 121 id. 328.) If he chooses to reduce the amount of the debt before suit by a sale of the collateral, it is for him to determine when the sale shall be made, reasonable notice being given to the debtor. The rule that governs as between a vendor and a vendee who refuses to accept goods bought by him is not applicable to such a case.

Plaintiffs are entitled to judgment for the amount claimed.