JAMES BROWN and Others, Copartners, Doing Business under the Firm Name of BROWN BROTHERS & COMPANY, Plaintiffs, *v.* C. ROSENSTEIN COMPANY, Defendant.

Supreme Court, New York Special Term, May, 1923.

Negotiable instruments — foreign bill of exchange — letter of credit — shipment of goods from abroad — payment of draft by drawee — action against buyer on agreement to provide funds — answer — defense that shipping documents were forged — risk of forgery on buyer — summary judgment ordered for plaintiffs.

On August 26, 1922, plaintiffs, a firm of bankers, at defendant's request, issued a letter of credit authorizing one V. in Bulgaria to draw upon them at three months' sight for account of defendant for any sum or sums not exceeding in all a certain amount for eighty-five per cent cost of merchandise to be shipped to New York, bills to be drawn and shipment completed on or before September 30, 1922. At defendant's request and risk V. was advised of the issue of said credit by telegraph through a London firm. Prior to the issuance of the letter of credit and to induce the same defendant executed and delivered to plaintiffs

a receipt and obligation by which it agreed to provide plaintiffs, previous to the maturity of any and all drafts drawn under said credit, with cash sufficient to pay them together with a certain commission on drafts so drawn. Under the letter of credit V. on September 25, 1922, drew upon plaintiffs, upon three months' sight, a draft for $4,500 accompanied by all documents specified in the letter of credit, including a bill of lading and a properly certified invoice covering certain merchandise, and a policy of marine insurance satisfactory to plaintiffs. On October 13, 1922, the draft upon presentation with the accompanying documents was accepted by plaintiffs and they obtained from the holders thereof for account of defendant the accompanying documents. The same day plaintiffs having notified defendant of all facts relating to the draft delivered to defendant at its request a trust receipt acknowledging the delivery of the bill of lading and referring to the acceptance of the draft under the letter of credit. Prior to the maturity of the draft plaintiffs requested defendant pursuant to its obligation to provide them with funds sufficient to meet the payment of the draft together with plaintiffs' commission. Defendant having refused and neglected to provide plaintiffs with the amount of the draft, it was upon presentation to plaintiffs at maturity by the holder thereof in due course paid by plaintiffs. The answer of defendant in an action to recover the amount of the draft so paid by plaintiffs alleged that the bill of lading was a forgery, that the policy of marine insurance was also a forgery and that prior to the payment of the draft having discovered the fraud and forgery notified plaintiffs of the fact and demanded that they should not pay the draft. *Held,* that denials in the answer of the drawing of the draft by V. and that it was accompanied by the specified documents, were not made in good faith and raised no real issue.

The letter of credit having been issued and plaintiffs having accepted the draft, the defendant was bound by its contract to reimburse the plaintiffs, as even without express provision of the credit agreement which relieved them from all responsibility, they would not have been responsible for forged shipping documents; in that respect the ultimate risk was on the buyer for the reason that having selected his seller he should be held responsible for his acts in relation to such documents.

Allegations pleaded as a complete defense considered and held either wholly irrelevant to the cause of action stated in the complaint or insufficient in law to constitute a defense thereto and the documents, copies of which were attached to the complaint, showing that plaintiffs accepted the draft which was all they contracted to do and having accepted it, the defendant's obligation to reimburse was fairly established and plaintiffs' motion for a summary judgment will be granted, with costs.

The letter of credit was a separate and distinct contract and the obligation of plaintiffs thereunder was entirely unaffected by the contract of sale entered into between the defendant and V.

Defendant having refused to pay the draft solely on the ground of the alleged forgery of the bill of lading and of the policy of marine insurance was not entitled, after suit brought, to avail himself of any other defense.

MOTION for summary judgment.

*Appleton, Butler & Rice,* for plaintiffs.

*H. Aplington,* for defendant.

BURR, J. Motion for summary judgment, under rule 113 of the Rules of Civil Practice. The plaintiffs are copartners carrying on

business as bankers under the firm name of Brown Brothers & Company. Plaintiff's complaint for a first cause of action alleges: On or about the 26th day of August, 1922, at defendant's request they issued a letter of credit authorizing Georges Vemian, of Varna, Bulgaria, to draw upon plaintiffs at three months' sight for account of defendant for any sum or sums not exceeding in all $4,500 for eighty-five per cent cost of merchandise to be shipped to New York, the bills to be drawn and shipments completed on or before September 30, 1922. At defendant's request and risk the issue of said credit was advised by telegraph through Brown, Shipley & Company of London to said Georges Vemian, Varna, Bulgaria. A copy of the said letter of credit is attached to the complaint. In order to induce the plaintiffs to issue the said letter of credit the defendant executed and delivered to the plaintiffs prior to the issue of the letter of credit a receipt and obligation by the terms of which the defendant agreed to provide plaintiffs previous to the maturity of all drafts drawn under said credit with sufficient funds in cash to meet the payment of the same, together with a commission of three-eighths per cent on the drafts so drawn. A copy of the receipt and obligation is attached to the complaint. On or about September 25, 1922, Georges Vemian drew upon the plaintiffs under the said letter of credit, at three months' sight, a draft for $4,500. A photostat of the draft is annexed to the complaint. The said draft was accompanied by all the documents specified in the letter of credit, including a bill of lading and properly certified invoice covering fifty tons millet seed and fifty tons canary seed and a marine policy satisfactory to plaintiffs. A photostat of the bill of lading, invoice and insurance policy is attached to the complaint. On or about October 13, 1922, said draft, with the accompanying documents, was presented by the holders thereof, Messrs. John Munroe & Company, to the plaintiffs for acceptance, and plaintiffs thereupon accepted said draft and obtained from the holders for account of defendant the said accompanying documents. On or about October 13, 1922, plaintiffs notified the defendant that the said draft had been drawn by Georges Vemian under said letter of credit and that plaintiffs had accepted same and had obtained for defendant's account the accompanying documents. At defendant's request the plaintiffs thereupon delivered to defendant a trust receipt, a copy of which is attached to the complaint. The plaintiffs thereafter and prior to the maturity of the said draft requested the defendant pursuant to the terms of the said obligation to provide plaintiffs with funds sufficient to meet the payment of the said draft, together with the plaintiff's commission. At the maturity of the said draft on or about January 15, 1923, the same was pre-

sented to plaintiffs for payment by the Federal Reserve Bank of New York, the then holder thereof, and thereupon plaintiffs paid the same. Defendant has refused and neglected to provide plaintiffs with the amount of the said draft at or prior to the maturity thereof and the agreed commissions of plaintiffs. For a second cause of action plaintiffs allege the issuance of another letter of credit at defendant's request on or about September 12, 1922, authorizing the said Georges Vemian to draw upon plaintiffs at three months' sight for account of defendant for any sum not exceeding $2,750 in the same manner and under the same conditions, under which letter of credit the said Georges Vemian drew upon the plaintiffs at three months' sight a draft for $2,735, which was presented and paid in the same way as was the draft in the first cause of action. Copies of all the papers are attached to the complaint in the same way as the first cause of action. The total amount claimed to be due under both drafts from defendant is $7,262.13. The defendant in its answer admits the obtaining of the letter of credit for $4,500 and that it executed the receipt and obligation as alleged. It denies upon information and belief that Georges Vemian drew upon the plaintiffs under the said letter of credit at three months' sight a draft for $4,500; denies knowledge or information sufficient to form a belief of the presentation of said draft to plaintiffs by John Munroe & Company; admits the notification set forth in the complaint, but denies that the documents referred to were delivered at defendant's request and denies the implication therein contained that in said alleged " trust receipt " the defendant receipted for actual merchandise; and alleges that said " trust receipt " only applies, if at all, to the documents received, " which said documents as hereinafter alleged being fraudulent, cannot create any legal or equitable obligation upon the defendant herein." Defendant admits the notification and request to provide the funds to meet the draft; denies any knowledge that said draft was presented to plaintiffs for payment and that plaintiffs paid same; denies that it " neglected " to provide the plaintiffs with the amount of the said draft and admits it has not paid plaintiffs, although duly demanded, the sum of $4,516.88 claimed by plaintiffs, representing the amount of said draft and plaintiffs' commissions. Defendant's answer to plaintiffs' second cause of action is similar to the answer to the first cause of action. " For a complete defense " to each cause of action defendant alleges that all the terms and conditions stated in the letter of credit set forth in the complaint were not and have not been duly performed at any time prior to or since the alleged acceptance and alleged payment of the draft; that all the terms and conditions upon which the guaranty worked alleged to have been

executed by the defendant have not been performed or complied with at any time prior to or since the alleged payment of the said draft; that none of the merchandise described in the complaint has ever been shipped or attempted to be shipped by any one and never has been received by the defendant; that the alleged bill of lading is fraudulent, void and of no effect, the same being a forgery, never issued by the Cunard Steamship Company, Ltd., and never signed by any officer, agent or employee of said company; and said company never acquired possession of any of the merchandise described in said forged bill of lading and never shipped any of the said merchandise; that the alleged guaranty is and was at the date of the execution of the same and is now wholly without consideration; that at the time of the alleged issuance of the letter of credit, the alleged acceptance and payment of the draft the plaintiffs had in their possession the knowledge and information that said Georges Vemian, the drawer of said draft and who forged the bill of lading, was dishonest and a criminal, and upon information and belief had been guilty of forgery similar in manner to the forgery committed in the transaction set forth in the complaint; that such knowledge was then unknown to the defendant, was not disclosed by the plaintiffs to defendant at the time of or prior to the issuance of the said letter of credit; that prior to the alleged payment of said draft the defendant having discovered the fraud and forgery above set forth, notified the plaintiffs thereof and demanded that said plaintiffs should not pay said draft; that plaintiffs refused to comply with said demand not to pay, assigning as reason therefor that they were advised by their attorneys that such refusal would only subject plaintiffs to an action to which no defense could be made; that upon information and belief " marine insurance including war risk " was never effected, and that the alleged policy of insurance set forth in the complaint is not a genuine document, but is, in its entirety, a forgery. From the affidavit of William H. Hands, the manager of the commercial credit department of Brown Brothers, who avers he is personally familiar with the transaction between plaintiffs and defendant out of which the causes of action set forth in the complaint arose, submitted in support of this motion, it appears that " the credit agreements or obligations, copies of which are attached to the complaint, are signed C. Rosenstein Company, by Adolph F. Oppenheimer, secretary. They are in the precise form which have been issued by plaintiffs for upwards of ten years last past, and the originals so signed are in the possession of the plaintiffs. * * * On October 14, 1922, the documents accompanying the said drafts, viz., bills of lading, invoice and insurance policy received from John Munroe & Company, were delivered to the defendant and a trust

receipt signed C. Rosenstein Company, Adolph F. Oppenheimer, secretary, was received by plaintiffs, copy of which is attached to the complaint. In the latter part of November, 1922, the said Adolph F. Oppenheimer called upon me and stated that the merchandise described in the documents had not arrived, and on December 1, 1922, addressed to the plaintiffs a letter, of which the following is a copy: ' Referring to the interview which our Mr. Oppenheimer had with Mr. Hands several days ago relative to your acceptances against letters of credit issued by you for our account in favor of Georges Vemian, Varna, Bulgaria, the bills of lading in connection with these transactions and all other documents in connection therewith being forged documents, and no merchandise having been received thereunder, we hereby notify you not to pay any moneys or in any manner to recognize said acceptances, and would suggest that you advise the bankers through whom these documents were presented to such effect. Upon advice of our counsel, we will not honor or recognize any payments of any sum or assume any liability therein against said bills of lading and all other documents connected with this transaction.' At the time of the receipt of the said letter the acceptances referred to were outstanding and were payable under the terms of the acceptance on January 15, 1923, and plaintiffs had no knowledge at that time by whom said acceptances were held and no means of obtaining such knowledge; that plaintiffs demanded the fulfillment by the defendant of the agreements expressed in said credit obligations, and the sole reason assigned by the defendant for its refusal to provide the plaintiffs with the amount of the said acceptances was the defendant's claim that the documents which accompanied the said drafts were forgeries. The plaintiffs have at no time had any relations with Georges Vemian, the drawer of the said drafts, accepted under the credits referred to, and had and have no knowledge as to the said Georges Vemian, except as communicated by the defendant." By stipulation entered on the record, defendant's counsel waived the objection that the motion was premature, the time to serve an amended answer not having expired, and defendant's counsel upon the argument conceded the accuracy of the copies attached to the complaint of the letters of credit, Exhibits A-1 and E-1, the credit agreements upon which the action is brought, A-2 and E-2, and the drafts of which photostats are annexed to the complaint, as Exhibits B and F, and the trust receipt, Exhibit D. In view of this concession the court deemed it unnecessary to have the originals filed, as plaintiffs offered to do. The accuracy of the photostats, copies of the documents attached to the complaint, is, therefore, not now questioned. The answer admits that

defendant applied for both credits and that it signed the credit agreements. The denial in the answer as to the accuracy of the exhibits attached to the complaint fails in view of the concession made by counsel. The succeeding allegations are denials of the drawing of the draft by Vemian for $4,500 and a denial that the draft was accompanied by the specified documents. This denial, however, is to be read in connection with the allegations contained in what is called " a complete defense " to the first and second causes of action, wherein the defendant alleges that the bill of lading was a forgery; that the marine policy was also a forgery, and that prior to the payment of the draft plaintiffs' Exhibit B, " the defendant having discovered the fraud and forgery above set forth, notified the plaintiffs thereof and demanded that said plaintiffs should not pay said drafts." Moreover defendant's letter to plaintiffs of December 1, 1922, also refers to the letters of credit and acceptances and makes a claim that the documents " in connection therewith were forged." The answer admits the execution of the trust receipt, Exhibit D; admits the receipt of notice from the plaintiffs to provide for the outstanding acceptance, and alleges that it has no knowledge of the fact of payment by plaintiffs of the acceptance. It is entirely clear that these denials do not raise any real issue and are not made in good faith. The photostats of the documents attached to the complaint and the defendant's letter of December 1, 1922, indicate that the only real question is as to the effect of the defendant's agreement in view of the alleged forgery of the documents which accompanied the draft. The 2d paragraph of Exhibit A-2, attached to the complaint, is conclusive upon this point. It reads as follows: " It is further understood that I/we assume all risk of the acts of the users of said letter of credit as my/our agents, and that Messrs. Brown Brothers & Company shall not be responsible for the kind or quality of the merchandise or contents of packages shipped, or for the genuineness or correctness of the documents presented by the users as purporting to comply with the terms of said credit; and it is further agreed that the delivery to Messrs. Brown Brothers & Company of any such document shall be sufficient evidence of the genuineness and correctness of that document, of the merchandise mentioned therein and of the good faith of the shippers." Plaintiffs have conclusively established that the Vemian credits were issued by the plaintiffs at the times stated in the complaint and that the defendant, in order to procure the issue of these credits, delivered to the plaintiffs their agreements to reimburse the plaintiffs for the amount of all drafts drawn thereunder and accepted by the plaintiffs. It is also conclusively established that the said Vemian drew upon the plaintiffs under these credits drafts

for $4,500 and $2,735 respectively, and that the drafts were accompanied by bills of lading, invoices and insurance policies shown by the photostats. It is also conclusively established that the plaintiffs accepted the Vemian drafts accompanied by the bills of lading, invoices and insurance policies on October 13, 1922, and that upon acceptance, plaintiffs obtained for the defendant's account delivery of the said documents, and also that upon October 14, 1922, as acknowledged by the trust receipt, Exhibit D, these documents were delivered by the plaintiffs to the defendant. And, finally, that on January 15, 1923, the drafts were paid by plaintiffs to the Federal Reserve Bank of New York, the then holder. There is, therefore, no issue of fact. The documents, now undisputed, show the history of both transactions in suit from the time of the application by the defendant to the plaintiffs for the issue of the respective letters of credit down to the payment by the plaintiffs of the acceptances at maturity. The letters of credit, Exhibits A-1 and E-1, are contracts or engagements entirely distinct from the contracts of purchase and sale entered into between the defendant and Vemian, and the obligations of the plaintiffs expressed in such letters of credit were unaffected by any transaction between the defendant Rosenstein Company and Vemian. This was settled in *American Steel Co.* v. *Irving Nat. Bank,* 266 Fed. Rep. 41; *Frey & Son, Inc.,* v. *Sherburne Co.,* 193 App. Div. 849; *Lamborn* v. *Lake Shore Banking & Trust Co.,* 196 id. 504; affd., 231 N. Y. 616. The defendant by the express terms of the agreements delivered to the plaintiffs bound themselves " to provide previous to maturity of the bills drawn in virtue of said credit sufficient funds in cash to meet the payment of the same." The drafts were drawn in virtue of the respective credits and were accompanied by the specified documents. Under the first letter of credit (1) the drafts were to be at three months' sight; (2) the drafts were to be for not exceeding $4,550; (3) the drafts were to be accompanied by bills of lading, invoice and insurance policy relating to fifty long tons millet seed and fifty long tons canary seed; (4) the drafts were to be drawn and shipment made on or before September 30, 1922. Under the second letter of credit the amount was $2,750, the merchandise fifty long tons of canary seed, and the expiration date for shipment and negotiation October 31, 1922. Otherwise the terms were the same as provided in the first letter of credit. Each draft on its face was clearly within the terms of the credit under which it purported to be drawn. The only evidence of shipment required was the bills of lading. These were in the standard Cunard Line form and purported to evidence shipment of the specified merchandise on steamship *Tyria.* Each is dated September 25, 1922, well within

the periods specified in the respective credits. The bills of lading purport to be signed by an agent of the Cunard Line and acknowledge the receipt of merchandise from Vemian for transportation to New York and delivery to the plaintiffs. The invoices are also within the terms of the credits. Each is dated September 25, 1922, and describes appropriate merchandise which is said to have been shipped per steamship *Tyria.* Each refers to a three months' sight draft under plaintiffs' credits, " acceptable against shipping documents." The invoice Exhibit C-2, made to C. Rosenstein Company, has as its initial statement, " In execution of my Contract No. 104, 25 /8 /22," thus indicating that defendant's contract with Vemian was entered into August 25, 1922, or before the issue of the credit, Exhibit A-1, which was dated August 26, 1922. The invoice Exhibit G-2 is said to be " In execution of my Contract No. 111, dated 9 /9 /22," the contract between the Rosenstein Company and Vemian being thus dated three days before the issue of the credit Exhibit F, which is dated September 12, 1922. When the drafts with these specified documents were presented to the plaintiffs on October 13, 1922, by John Munroe & Company, the plaintiffs accepted the drafts payable at the Bank of America, on January 15, 1923. The shipping documents so obtained by plaintiffs were delivered to the defendant on October 14, 1922, as the trust receipt (Exhibit D) bearing that date acknowledged. The documents so delivered were held by the defendant for nearly six weeks without objection or criticism. Section 224 of the Negotiable Instruments Law allows but twenty-four hours to the drawee within which to act upon a draft presented for acceptance. The photostats clearly show that the documents were regular in form and appearance and were those prescribed by the credits. Upon acceptance by plaintiffs the drafts became current in the discount market, and, as the indorsements indicate, were transferred by John Munroe & Company to the First Federal Foreign Banking Association, and thereafter were presented by the Federal Reserve Bank in New York. The plaintiffs became bound by their acceptance to pay the drafts at maturity. Section 112 of the Negotiable Instruments Law provides: " The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance." Section 96 provides: "A holder in due course holds the instrument free from any defect of title of prior parties and free from defense available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Under the Negotiable Instruments Law, therefore, any holder in due course of the acceptances could have enforced payment " free from any defenses available to prior parties among

themselves." Vemian's alleged fraud in forging the shipping documents would have been no defense. It is not contended that the Federal Reserve Bank of New York was not a holder in due course. The defendant, by its letter of December 1, 1922, having refused to pay solely on the ground of the alleged forgery of the documents, cannot, after suit brought, avail himself of any other defense. This doctrine has been reiterated in the recent case of *Grimwood* v. *Munson S. S. Line,* 273 Fed. Rep. 166, 168, citing *Railway Co.* v. *McCarthy,* 96 U. S. 258, 267. See, also, *Littlejohn* v. *Shaw,* 159 N. Y. 188; *Hess* v. *Kaufherr,* 128 App. Div. 526; *Pierson & Co.* v. *American Steel Export Co.,* 194 id. 555. The execution and delivery of the trust receipt (Exhibit D) was an approval by defendant of the acceptance of the Vemian drafts under the credits. This trust receipt, as already pointed out, acknowledges the delivery of the bills of lading and refers to the acceptance of the plaintiffs under the first and second letters of credit. It also refers at the foot to the amount of the drafts, aggregating $7,235. No question was raised as to the regularity of the documents until six weeks after the delivery of this trust receipt. The trust receipt was a plain approval by defendant of plaintiffs' acceptance of the drafts. See *Benecke* v. *Haebler,* 38 App. Div. 344; affd., 166 N. Y. 631; cited with approval in *Frey & Son, Inc.,* v. *Sherburne Co.,* 193 App. Div. 849, citing also *Matter of Agra & Masterman's Bank,* L. R. (1867) Ch. App. 391. None of the matters pleaded in the so-called " complete defense " to the first and second causes of action is sufficient in law. The allegations pleaded in each of these " complete defenses " are either wholly irrelevant to the causes of action stated in the complaint or insufficient in law to constitute a defense. The documents submitted show that the plaintiffs accepted the Vemian drafts, which is all that they contracted to do, and having accepted them, the drafts being within the terms of the credit, the defendant's obligation to reimburse was fully established. There is no term or condition expressed in Exhibit A-2 to be performed by the plaintiffs. All of the obligations and covenants are those of the defendant. The plaintiffs were solely concerned with documents and the defendant expressly assumed all risk of Vemian's acts and absolved plaintiffs from responsibility for the genuineness or correctness of documents. Whether the merchandise was or was not shipped is a matter wholly between Vemian and the defendant. The allegation that the Exhibit A-2 by which defendant agreed to pay plaintiffs the amount of all drafts accepted by them under the letter of credit was without consideration is contradicted by the terms of the contract itself, which shows that the consideration for defendant's obligation to reimburse the plaintiffs was the issue of the credit to Vemian,

which obligated the plaintiffs to honor drafts drawn within the terms of the credit. The credit having been issued and the plaintiffs having accepted the Vemian draft, the defendant is bound by its contract to reimburse the plaintiffs. Even without the express provisions of the credit agreements Exhibits A-2 and E-2, which relieve plaintiffs from all responsibility, plaintiffs would not have been responsible for the forged documents. The subject is ably and comprehensively treated in a recent article in the Harvard Law Review on " Commercial Letters of Credit " (Vol. 35, April, 1922). Regarding this particular phase of it the learned author states (pp. 734, 735): " The buyer's agreement to reimburse the issuing bank usually contains an express provision that the bank shall be under no liability in respect to the goods or shipping documents. *Even in the absence of such provision* it is held that the bank assumes no responsibility in respect to forged or altered bills of lading or other shipping documents or defects in quality or quantity of the goods. \* \* \* But the great weight of authority is to the effect that the ultimate risk in respect to forged shipping documents is on the buyer. \* \* \* This result has been explained on the ground that the buyer, having selected his seller, should be responsible for his acts in respect to shipping documents " (citing cases). In the instant case the terms of the agreements entered into by the defendant with the plaintiffs on the faith of which the credits were issued contain provisions expressly declaring (1) that the shipper, Vemian, is the defendant's agent; (2) that the defendant assumes all risks of Vemian's act; (3) that plaintiffs are not to be responsible for the genuineness or correctness of the documents presented as purporting to comply with the terms of the credit, and (4) that the delivery of any such documents shall be sufficient evidence of the genuineness and correctness of that document and of the mer- chandise described therein, and of the good faith of the shippers. Defendant's answering affidavit contains nothing but a repetition of the denials and allegations contained in the answer. The Appellate Division in the case of *Dwan* v. *Massarene,* 199 App. Div. 872, 880, said: " \* \* \* The defendant must show that he has a *bona fide* defense to the action, one which he may be able to estab- lish. It must be a plausible ground of defense, something fairly arguable and of a substantial character. This he must show by affidavits or other proof. He cannot shelter himself behind general or specific denials, or denials of knowledge or information sufficient to form a belief. He must show that his denial or his defense is not false and sham, but interposed in good faith and not for delay." See, also, *General Investment Co.* v. *I. R. T. Co.,* 235 N. Y. 133. The defendant has failed to show facts sufficient to entitle it to

defend and the motion for summary judgment is, therefore, granted, with ten dollars costs. Summary judgment granted, with costs. Order signed.

Ordered accordingly.